## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**LEODITUS ARAMUS SMITH,**

      **Movant,**

v.                                 **Civil Action No. 3:10-cv-01398**
                                 **(Criminal No. 3:09-cr-00158-06)**

**UNITED STATES OF AMERICA,**

      **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 425). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The United States has filed a response (ECF No. 430), and Movant has filed a reply and supplement to his motion (ECF Nos. 439 and 452). The United States responded to the supplement (ECF No. 454), and Movant filed a reply to the response (ECF No. 462). Accordingly, the matters in dispute have been fully briefed, the record is well-developed, and a sufficient basis exists upon which to resolve the pending motion. For the reasons that follow, the undersigned respectfully **RECOMMENDS** that Movant's Motion be denied and this matter be dismissed, with prejudice, and removed from the docket of the Court. Given that the undersigned conclusively **FINDS** that Movant is not entitled to the relief requested, an evidentiary hearing is not warranted.

*Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).[1]

## I.      **Background**

From October 2008 to June 4, 2009, the Alcohol, Tobacco, and Firearms River Cities Gun Crimes Task Force (ATF) and the Drug Enforcement Administration (DEA) conducted a joint investigation of narcotics distribution in and around Huntington, West Virginia.[2] As part of the investigation, the ATF and DEA conducted a series of controlled buys of crack cocaine and heroin from a group of six individuals, including Movant Leoditus Aramus Smith ("Smith"). Based upon their nine month investigation, the DEA and ATF concluded that Smith and the other five individuals were involved in a drug trafficking organization specifically formed to distribute controlled substances in the area. (ECF No. 111 at 16–19).

On June 23, 2009, a federal grand jury in Huntington returned a ten-count indictment, charging Smith and his five co-defendants with conspiracy to distribute 50 grams or more of cocaine base, also know as "crack," and a quantity of heroin. (ECF No. 1 at 1). In addition to the conspiracy charge, Smith was named in two other counts of the indictment. Count Nine charged Smith with knowingly and intentionally distributing

---

[1] Movant recently filed a second Motion to Supplement in which he seemingly argues that the Supreme Court's decision in *Depierre v. United States,* ___US___ , 131 S.Ct. 2225, 180 L.Ed.2d 114 (2011) provides a basis to set aside his plea. Movant argues that he was never properly indicted for conspiracy to distribute cocaine base, thus, did not receive notice of the charge. Without proper notice, his plea could not have been voluntary and intelligent. The *Depierre* decision, which effectively broadened the definition of cocaine base to include any cocaine in its chemically basic form (e.g. freebase or coca paste), has no discernable legal significance to this case. Movant's guilty plea constitued a waiver of any defects in the indictment. *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Accordingly, regardless of whether the indictment referenced 21 U.S.C. § 841(a) or § 841(b), Movant was expressly charged with conspiracy to distribute crack and heroin, admitted to conspiring to distribute crack and heroin, and was convicted of that crime.  Accordingly, his motion is frivolous and should be denied.

[2] The factual background is taken from Smith's underlying criminal case, *United States of America v. Robinson et al,* Case No. 3:09-cr-00158-06.

five grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1). (*Id.* at 10). Count Ten charged Smith with knowingly and intentionally distributing a quantity of heroin in violation of 21 U.S.C. § 841(a)(1). (*Id.* at 11). Following the return of the indictment, a warrant for Smith's arrest was issued. (ECF No. 16). The next day, June 24, 2009, Smith was arrested in Proctorville, Ohio. (ECF No. 22).

On June 30, 2009, Smith's arraignment and detention hearing were held. (ECF No. 44). Smith pled not guilty to the charges contained in the indictment and a trial was scheduled before United States District Judge Robert C. Chambers on September 1, 2009. On August 27, 2009, Smith executed a written agreement with the United States in which he agreed to enter a guilty plea to the conspiracy charge in exchange for dismissal of the other two counts against him. (ECF No. 107). Smith's plea agreement contained the following express waivers of his right to appeal and collaterally attack his guilty plea, conviction, and sentence:

> The parties retain the right to seek appellate review of the District Court's determination of the Sentencing Guideline range, if an objection is properly preserved. Nonetheless, Mr. Smith knowingly and voluntarily waives his right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court on other grounds, so long as that sentence is below or within the Sentencing Guideline range determined by the District Court prior to any departure or variance. Similarly, the United States waives its right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court on any other ground, so long as that sentence is within or above the Sentencing Guideline range determined by the District Court prior to any departure or variance.
>
> Mr. Smith also knowingly and voluntarily waives the right to challenge his guilty plea and his conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.
>
> The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

(*Id.* at 4–5). At its conclusion, the plea agreement also contained the following acknowledgment:

> I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this six-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

(*Id.* at 6). Smith initialed each page of the agreement, signed and dated it. Smith subsequently signed a separate written plea of guilty, which stated, "In the presence of Phillip Sword, my counsel, who has fully explained the charges contained in the indictment against me, and having received a copy of the indictment before being called upon to plead, I hereby plead guilty to the charge contained in count one of the indictment." (ECF No. 106).

Smith's plea hearing was held before Judge Chambers on September 14, 2009. At the hearing, the Court engaged Smith in a thorough Rule 11 colloquy. (ECF No. 104). First, the Court established that Smith was competent to enter a guilty plea and then questioned Smith regarding the adequacy of his legal representation:

| The Court: | Mr. Smith, have you had enough time to discuss this case with your lawyer? |
|---|---|
| Smith: | Yes, sir. |
| The Court: | Has he been able to answer your questions about how you should proceed? |
| Smith: | Yes, sir. |

|  |  |
|---|---|
| The Court: | Are you completely satisfied with the legal advice he's given you? |
| Smith: | Yes, sir. |

(ECF No. 111 at 3–5). Subsequently, Smith's attorney explained the contents of the plea agreement on the record. (*Id.* at 5–10). The Court then questioned Smith regarding his understanding of the plea agreement:

|  |  |
|---|---|
| The Court: | Mr. Smith, do you understand what this agreement does and what it requires of you? |
| Smith: | Yes, sir. |
| The Court: | Do you understand a part of this agreement is the stipulation of facts that can be used against you today for this plea or for sentencing or even at trial under some circumstances? |
| Smith: | Yes, sir. |
| The Court: | Did you go over each of these paragraphs with your lawyer before you signed this plea agreement? |
| Smith: | Yes, sir, I did. |
| The Court: | Do you want me to accept the plea agreement? |
| Smith: | Yes, sir. |

(*Id.* at 11).

Next, the Court read the contents of the indictment to Smith, explaining the terms contained therein. The Court reviewed the factual basis for Smith's guilty plea, asking him to state in his own words what he did that made him guilty of the charge. (*Id.* at 12–14). Smith testified that he and the co-defendants "sold drugs together pretty much." Smith indicated that they sold heroin and crack cocaine, shared customers, and pooled their profits to buy additional drugs for resale. (*Id.* at 14–15). According to Smith, he and the co-defendants worked collectively in the Huntington, West Virginia

area from October 2008 to June 4, 2009. (*Id.* at 15).

The Government then presented the testimony of Wren Ray, DEA Special Agent, regarding his investigation of the drug trafficking organization and Smith's personal involvement in it. (ECF No. 111 at 16–19). Special Agent Ray testified that Smith and co-defendant Kevin Robinson originally agreed to obtain quantities of crack cocaine and heroin from out of state and transport those narcotics to Huntington where they would be sold. (*Id.* at 17). A short time later, Jason Belcher joined the organization and brought with him Smith's other co-defendants. (*Id.* at 17). Smith and the co-defendants began using a number of houses located throughout the Huntington area to serve as distribution centers. (*Id.*). Members of the conspiracy shared customers with one another. (*Id.*). Smith and his co-defendants began to use cell phones that were effectively interchangeable—a customer could call a cell phone and if its owner was not present, one of the other co-defendants would take the call and arrange for the drugs to be delivered to the customer. (*Id.* at 17–18). Smith, Robinson, and Belcher acted as leaders of the conspiracy, giving directions to the other co-defendants about where to distribute drugs and make customer deliveries. (ECF No. 111 at 18). The three leaders pooled the proceeds of their drug sales and then used that pool of money to buy additional quantities of crack cocaine and heroin for resale. (*Id.* at 18). Federal agents purchased crack or heroin from Smith and all of his co-defendants except for Robinson. (*Id.*). During the investigation, the total quantity of crack cocaine purchased from members of the conspiracy exceeded 50 grams. (*Id.*). According to Special Agent Ray, following his arrest, Smith admitted to his involvement in the drug trafficking organization. (*Id.* at 19).

At the conclusion of the testimony, the Court asked Smith if Special Agent Ray's statements were substantially correct. Smith agreed that the testimony was accurate. (*Id.* at 19–20). The Court also asked Smith if he was responsible for 50 grams of cocaine base as stipulated in the plea agreement. Again, Smith acknowledged the accuracy of the stipulation.

The Court proceeded to explain the consequences of Smith's guilty plea. (ECF No. 111 at 20–24). The Court discussed Smith's potential loss of civil rights, sentencing exposure, terms of supervised release, potential monetary penalties, and loss of federal benefits. (*Id.* at 20–22). Next, the Court explained at length the sentencing guidelines, their applicability to Smith's case, the unavailability of parole, and the binding nature of the guilty plea. (*Id.* at 22). Continuing with the plea colloquy, the Court reviewed the terms of Smith's plea agreement concerning Smith's waiver of appellate and collateral attack rights:

> The Court: Do you understand that both you and the Government may have the right to appeal the sentence I impose except to the extent that you have waived or limited your rights in the plea agreement?
>
> Smith: Yes, sir.
>
> The Court: In the plea agreement, you agreed to give up your right to challenge your guilty plea or the conviction or the sentence imposed in any collateral attack. That includes a motion brought under what's called Section 2255, or a writ of habeas corpus, except for a claim based on ineffective assistance of counsel.
>
> Also in the plea agreement, while you agreed that both you and the Government may appeal any properly preserved objection you may have to the sentencing guideline determinations by this Court, that you agreed to waive your right to seek appellate review of the sentence of imprisonment or the fine imposed on any other ground as

> long as that sentence is below or within the guideline range determined by the Court before any departure or variance.
>
> Do you understand that these waivers are generally enforceable, and if you want to raise any of these matters, you'll have to get past these waivers in the Court of Appeals?

Smith:       Yes, sir.

(*Id.* at 23–24).

The Court also discussed at length the constitutional and other legal rights Smith would give up if he chose to plead guilty. (*Id.* at 24–26). Finally, the Court questioned Smith regarding the voluntary nature of his guilty plea:

The Court:   Has anyone forced you, threatened you, or intimidated you, or talked you into pleading guilty against your will?

Smith:       No, sir.

The Court:   Are you acting voluntarily and of your own free will in entering this guilty plea?

Smith:       Yes, sir.

The Court:   Is pleading guilty your own idea?

Smith:       Yes, sir.

The Court:   Has anyone promised you something or told you anything different from what we've discussed here in court today to get you to plead guilty?

Smith:       No, sir.

The Court:   All right. I find your guilty plea is voluntary. At this time do you have any questions or seconds thoughts about pleading guilty?

Smith:       No, sir.

(*Id.* at 26–27). In conclusion, the District Court stated, "I find that Mr. Smith is fully competent, that there's a sufficient factual basis [for the guilty plea], he understands the

nature of the charge and the consequences of pleading guilty, he understands the rights he's giving up, and his plea is voluntary." (ECF No. 111 at 27). The Court accepted Smith's plea and adjudged him guilty of the conspiracy charge. The Court deferred acceptance of the plea agreement pending completion of a Presentence Investigation Report (PSR). Sentencing was scheduled for December 14, 2009.

A PSR was prepared prior to sentencing, which reviewed Smith's co-defendants, the charge and Smith's conviction, the plea agreement and stipulation, the offense conduct, facts surrounding Smith's arrest, and summaries of relevant statements made by co-defendants and other witnesses. (ECF No. 174). Claimant's base offense level was calculated to be 32. (*Id.* at 11). A two level firearm enhancement was added because members of Smith's conspiracy were "known to carry weapons during drug deals and to trade weapons for drugs." (ECF No. 174 at 11). Smith's offense level was therefore calculated to be 34. (*Id.*). The Probation Officer found that Smith was a manager/supervisor of criminal activity involving five or more participants, resulting in an additional three level managerial enhancement and an adjusted offense level of 37. (*Id.* at 11–12). The Probation Officer reviewed Smith's criminal history and found that Smith met the career offender criteria set forth in U.S.S.G. § 4B1.1. (*Id.* at 12). Under the career offender provision, Smith's offense level was also 37. (*Id.*). The Probation Officer credited Smith with a two-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and an additional one-point reduction pursuant to U.S.S.G. § 3E1.1(b). (ECF No. 174 at 12). Therefore, Smith's total offense level was calculated to be 34. (*Id.*).

Smith's history of criminal convictions resulted in a criminal history score of 13. (*Id.* at 16). Because the federal offense in this case was committed less than two years

following Smith's release from state custody on February 23, 2008, two points were added to his criminal history score pursuant to U.S.S.G. § 4A1.1(e). (*Id.*). Smith's total criminal history score was 15, resulting in a criminal history category of VI. (*Id.*). Smith's status as a career offender also gave him a criminal history category of VI pursuant to U.S.S.G §4B1.1. (*Id.*). Based on Smith's total offense level of 34 and a criminal history category of VI, Smith's guideline range of imprisonment was calculated to be 262-327 months. (ECF No. 174 at 20). Smith raised no objections to the final PSR.

Sentencing was held on December 14, 2009. (ECF Nos. 170, 456). Smith appeared in person with counsel pursuant to his guilty plea. The Court adopted the PSR without objection from either party. (ECF No. 456 at 2–6). The Court found that Claimant's total offense level was 34 with a criminal history category of VI resulting in an advisory guideline range of 262-327 months. (*Id.* at 6). Smith's motion for a downward departure was denied by the Court. (*Id.* at 16). The Court subsequently sentenced Claimant to 262 months of incarceration. (*Id.*). Smith was informed of his appeal rights and the Government's motion to dismiss Counts Nine and Ten of the indictment was granted. (*Id.* at 18–19).

## II.   <u>**Movant's Grounds for Vacating, Setting Aside, or Correcting His Sentence.**</u>

Smith identifies the following grounds in support of his Motion to Vacate:

1.   The guilty plea was unknowing and involuntary and a product of coercion;

2.   Counsel rendered ineffective assistance related to Smith's guilty plea;

3.   Counsel rendered ineffective assistance related to sentencing;

4.    The trial court illegally tried and sentenced Smith based on "fictitious jurisdiction;"

5.    Smith's Fifth Amendment due process rights were violated;

6.    Smith was "subjected to a civil arrest" and imprisoned "for debt;" and

7.    The 100-1 disparity in sentencing related to crack cocaine was unconstitutional.

## III.   <u>**Standard of Review**</u>

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence imposed in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. Because a § 2255 motion seeks to deny, evade, or impeach a judgment, claims of error that have previously been raised and rejected on a direct appeal of the judgment may not be raised again in a § 2255 motion.

Nonetheless, a § 2255 motion is not an alternative to filing a direct appeal. *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Nonconstitutional claims that *could have* been raised on direct appeal, but were not, may not be asserted in collateral proceedings. *Stone v. Powell*, 428 U.S. 465, 477, n.10, 96 S.Ct. 3037, 49 L.Ed2d 1067 (1976) (citing *Davis v. United States*, 417 U.S. 333, 345-346 and n. 15, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); *Sunal v. Large*, 332 U.S. 174, 178–79, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947)); *see also United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009) ("A petitioner who waives the right to appeal is not precluded

from filing a petition for collateral review. But he is precluded from raising claims that are the sort that *could have* been raised on appeal.") (quoting Brian R. Means, *Fed. Habeas Practitioner Guide,* Jurisdiction ¶ 1.23.0 (2006/2007)) (emphasis in the original) (internal citations omitted). Nonconstitutional claims that *could not have* been asserted on direct appeal may be raised in a § 2255 motion only if the alleged error constituted "a fundamental defect which inherently results in a complete miscarriage of justice" *Stone*, 428 U.S. at 477 n.10 (quoting *Davis*, 417 U.S. at 346; *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)) or is "inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979).

Similarly, a constitutional error that could have been, but was not raised on appeal may not be raised for the first time in a § 2255 motion, unless the movant can show either (1) "cause" that excuses the failure to raise the error on appeal and "actual prejudice" resulting from the error, or (2) that a miscarriage of justice would occur if the court refuses to entertain the collateral attack. *Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) (citing *Bousley v. United States*, 523 U.S. 614, 621–22, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)); *United States v. Mikalajunas,* 186 F.3d 490, 492–93 (4th Cir. 1999). To establish "actual prejudice," the movant must show that the alleged error resulted in an "actual and substantial disadvantage," rather than a mere possibility of prejudice. *Satcher v. Pruett,* 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray v. Carrier,* 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). To demonstrate a miscarriage of justice, the movant must prove "actual innocence" of the crime for which he was convicted, substantiating that "it is more likely than not, in

light of all the evidence, that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 621.

In addition to the above-stated limitations inherent in a collateral attack, a guilty plea, such as the one in this case, further diminishes the scope of plausible claims under § 2255.  Inasmuch as a voluntary and intelligent guilty plea amounts to an admission of the material elements of the charged crime, *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), it constitutes a waiver of *all claims* relating to non-jurisdictional errors that occurred prior to the plea, including claims relating to alleged constitutional deprivations. *U.S. v. Partlow*, 301 Fed.Appx. 297 (4th Cir. 2008) (citing *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)); *See also United States v. McCleary,* 112 F.3d 511, 1997 WL 215525 (4th Cir. 1997) (unpublished). In *McCleary,* the Fourth Circuit clarified the effect of the waiver as follows:

> In *Tollett,* the Supreme Court explained that 'a guilty plea represents a break in the chain of events which has preceded it in the criminal process.' As a result, '[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to entry of the guilty plea.'

*Id.* at *2, citing *United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (internal citations omitted).  As a result, a § 2255 motion in the context of a guilty plea is normally restricted to an attack on the voluntary or intelligent nature of the plea. The "focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea not the existence as such of an antecedent constitutional infirmity." *Tollett*, 411 U.S. at 266.

## IV.  <u>Analysis</u>

### A.    **Voluntary and Intelligent Guilty Plea**

Smith first argues that his guilty plea was not voluntary or intelligent. (ECF No. 425 at 4). He alleges that his plea was predicated on fraud and deceit; that trial counsel failed to preserve his constitutional rights; and that no factual basis was ever established to support the guilty plea. Contrary to Smith's assertions, a review of the record confirms that (1) Smith's guilty plea was voluntary and intelligent and (2) the District Court fully complied with Federal Rule of Criminal Procedure 11 in accepting Smith's plea. The District Court conducted a thorough Rule 11 colloquy, establishing that Smith was competent and understood the consequences of his plea prior to allowing Smith to enter a guilty plea. The Court offered Smith and his counsel multiple opportunities to seek clarification or withdraw from the hearing, yet when asked if he had any questions or second thoughts about pleading guilty, Smith denied having doubts and affirmed his desire to go forward with his guilty plea. Consequently, the undersigned finds that Smith's claim is without merit.

Federal Rule of Criminal Procedure 11 governs the validity of guilty pleas. The purpose of the Rule 11 colloquy is to ensure that the plea of guilty is entered into knowingly and voluntarily. *See United States v. Vonn,* 535 U.S. 55, 58, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002); *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed2d 747 (1970). When accepting a guilty plea, the Court must address the defendant personally in open court and inform him of the rights that he is waiving by changing his plea to guilty. Fed.R.Crim.P. 11(b). The court also must determine whether there is a factual basis for the plea and ensure that the plea did not result from force, threats, or non-plea agreement promises. *Id.; see also United States v. DeFusco,* 949 F.2d 114,

119–20 (4th Cir. 1991). If the defendant fails to understand his constitutional protections and the charges made against him, the guilty plea is invalid and should not be accepted. *Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). "The purpose of Rule 11 is not only to detect and reject involuntary and unknowing guilty pleas but also to produce a suitable record of the plea and plea agreement." *United States v. Friedland*, 879 F.Supp. 420, 427 (D. N. J. 1995). Because the Rule 11 hearing provides the best evidence of a criminal defendant's understanding and acceptance of the plea and its consequences, when assessing the voluntary and intelligent nature of a guilty plea on a § 2255 motion, the reviewing Court necessarily allocates substantial weight to the Rule 11 colloquy.

Statements made during a hearing to accept a guilty plea are presumed to be true and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *U.S. v. Lemaster,* 403 F.3d 216 (4th Cir. 2005). The Fourth Circuit Court of Appeals explained that:

> a defendant's solemn declarations in open court ... 'carry a strong presumption of verity ... because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy ... Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

*Lemaster,* 403 F.3d at 221–22.

The District Court began the plea hearing by investigating Smith's competency to enter a guilty plea. (ECF No. 111 at 4–5). Smith affirmed that he could read and write, was not under the influence of any medications or alcohol, and fully understood the nature of the proceedings.  Smith's counsel agreed that he had no reason to question his

client's competence. The Court next questioned Smith regarding his legal representation. (*Id.* at 5). Smith acknowledged that he had been given ample opportunity to discuss the case with his lawyer and was completely satisfied with his counsel's representation. (*Id.*). Subsequently, counsel for Smith explained the contents of the plea agreement on the record. (*Id.* at 5–10). Smith averred that he understood the terms of the plea agreement and had reviewed each paragraph of the document with his counsel prior to signing it. (*Id.* at 11).

The District Court read verbatim the contents of the conspiracy charge outlined in Count One of the indictment, explaining the legal terms to Smith, and assessed the factual basis for Smith's guilty plea. (ECF No. 111 at 11–12). Smith testified that he was guilty of the conspiracy charge, admitting that he and his co-defendants worked together to sell heroin and crack cocaine in Huntington, West Virginia from October 2008 to June 4, 2009. (*Id.* at 14–15). The United States then presented the testimony of Wren Ray, Special Agent with the Drug Enforcement Administration, corroborating Smith's account of his involvement in the conspiracy to distribute narcotics in Huntington. (*Id.* at 16–19).

The Court proceeded to explain the consequences of Smith's guilty plea. (*Id.* at 20–24). The Court discussed Smith's potential loss of civil rights, sentencing exposure, terms of supervised release, potential monetary penalties, and loss of federal benefits. (*Id.* at 20–22). Next, the Court explained at length the sentencing guidelines, their applicability to Smith's case, the unavailability of parole, and the binding nature of the guilty plea. (*Id.* at 22). Continuing with the plea colloquy, the Court reviewed the terms of Smith's plea agreement concerning Smith's waiver of appellate and collateral attack rights. (ECF No. 111 at 23–24). The Court then discussed at length the constitutional

protections Smith would give up if he chose to plead guilty. (*Id.* at 24–26). Finally, the Court questioned Smith regarding the voluntary nature of his guilty plea. (*Id.* at 26–27). Smith testified that his guilty plea was voluntary and that he did not have any second thoughts about pleading guilty. (*Id.* at 27). Thus, the record demonstrates that the Court complied with the requirements of Rule 11 and that Smith's guilty plea was voluntary and intelligent. In addition to Smith's statements at the plea hearing, Smith initialed and signed a written plea of guilty and the plea agreement, attesting that his guilty plea was both knowing and voluntary. (ECF Nos. 106, 107). Smith now offers self-serving, conclusory assertions that contradict his testimony at the Rule 11 colloquy and his written guilty plea. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Lemaster,* 403 F.3d at 221–22. Smith's sworn statements at the guilty plea hearing are binding.  The District Court conducted a careful Rule 11 colloquy that established Smith's full understanding of the charges against him, the burden of proof on the United States, and the consequences of his guilty plea, as well as the knowing and voluntary nature of Smith's guilty plea. Given the Rule 11 colloquy, Smith's statements at the plea hearing, and the written documents signed by Smith, the undersigned **FINDS** that Smith's guilty plea was voluntary and intelligent.

### B.    Ineffective Assistance Related to Guilty Plea

In his pleadings, Smith raises numerous claims of ineffective assistance of counsel related to his guilty plea. (ECF No. 439). The Sixth Amendment to the U.S. Constitution guarantees criminal defendants the right to the effective assistance of

counsel during their criminal proceedings, *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a right which extends to the plea-bargaining process. *Lafler v. Cooper*, ___U.S.___, 132 S. Ct. 1376, 1384, 182 L.Ed.2d 398 (2012) (internal quotation marks omitted). While assistance "which is ineffective in preserving fairness does not meet the constitutional mandate," *Id.* at 685-86, "defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2001).

In *Strickland*, the Supreme Court adopted a two-prong test for determining whether a criminal defendant received ineffective assistance of counsel. A defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. at 687-91. "[J]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Hence, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). "The question [under *Strickland*] is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington,* 131 S.Ct. at 778.

A movant who alleges ineffective assistance of counsel after entering a guilty plea has a high burden to meet. *Hill v. Lockhart*, 474 U.S. 52, 53, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Strict adherence to the deferential *Strickland* standard is "all the more

essential when reviewing the choices an attorney made at the plea bargain stage"
because "[p]lea bargains are the result of complex negotiations suffused with
uncertainty, and defense attorneys must make careful strategic choices in balancing
opportunities and risks[.]" *Premo v. Moore,* 562 U.S. ___, 131 S.Ct. 733, 741, 178 L.Ed.2d
649 (2011). In the context of a guilty plea, the "performance" prong of the *Strickland*
standard is the same: whether counsel's representation fell below an objective standard
of reasonableness. *Hill*, 474 U.S. at 58–59. To establish prejudice in the face of a guilty
plea, the movant must show that "there is a reasonable probability that, but for counsel's
errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*
at 59. The lack of a formal record or history of how the charges played out at trial "works
against the party alleging inadequate assistance." *Premo,* 131 S.Ct. at 745 (2011). [3]

### 1.   *Failure to Conduct Pretrial Investigation*

Smith contends that trial counsel failed to conduct any pretrial investigation
prior to advising Smith to plead guilty. (ECF Nos. 425 at 4; 439 at 3–5, 7). According to
Smith, trial counsel: never investigated the underlying facts concerning the conspiracy;
never investigated evidence linking Smith to the sale of crack cocaine and heroin; and
failed to interview witnesses who would have provided Smith with an alibi on the date of
June 4, 2009 at the time of the crack cocaine and heroin sale.

Defense counsel's duty to investigate requires counsel to make reasonable
investigations or "to make a reasonable decision that makes particular investigations
unnecessary." *Strickland,* 466 U.S. at 690–91. A court's review of counsel's decision not

---

[3] Any claims of ineffective assistance of counsel concerning constitutional or statutory violations that
"occurred prior to [a defendant's] guilty plea and [are] unrelated to it" are foreclosed from review. *Fields
v. Attorney General of State of Md.,* 956 F.2d 1290, 1296 (4th Cir. 1992) (citing *Tollett v. Henderson*, 411
U.S. 258 (1973)).

to investigate is highly deferential in light of the circumstances at the time of counsel's representation. *Id.* at 691. The Supreme Court has held that even where counsel could have made a more thorough investigation, in considering claims of ineffective assistance of counsel, it addresses "not what is prudent or appropriate, but only what is constitutionally compelled." *Burger v. Kemp,* 483 U.S. 776, 794, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) (quoting *United States v. Cronic,* 466 U.S. 648, 665, n. 38, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). Further, in order to be successful, a petitioner must explain what additional evidence would have been obtained from the additional interviews or meetings. *See Bassette v. Thompson,* 915 F.2d 932, 940–41 (4th Cir. 1990). Ultimately, if counsel thoroughly reviews the facts and law, counsel's investigatory decisions are "virtually unchallengeable." *Strickland,* 466 U.S. at 690.

In the present case, Smith fails to identify what physical or testimonial evidence his attorney could have uncovered that would have been helpful to the defense or would have induced Smith not to plead guilty. *See Bassette,* 915 F.2d at 940–41 (holding that a petitioner must explain what additional evidence would have been obtained from additional investigation). With respect to the alleged alibi witnesses for the June 4, 2009 sale of crack cocaine and heroin, Smith does not identify these witnesses, nor does he explain what alibi they would have provided Smith. Further, Smith does not allege that these unidentified alibi witnesses had information relevant to the conspiracy charge in this case. While Smith appears concerned with the charges related to his June 4, 2009 sale of crack cocaine and heroin, he actually pled guilty to a charge of conspiracy to distribute 50 or more grams of crack cocaine and a quantity of heroin. Following his plea of guilty to the conspiracy charge, the Government moved to dismiss the charges related to Smith's sale of crack cocaine and heroin on June 4, 2009.

Investigation into the sale of crack cocaine and heroin on June 4, 2009 would have been of limited relevance to the charge of conspiracy at issue here. From October 2008 to June 4, 2009, the ATF and the DEA investigated Smith and his co-defendants regarding their involvement in the sale of cocaine and heroin. During that time, federal agents conducted a series of controlled buys of heroin and crack cocaine from Smith and his co-conspirators. According to Special Agent Ray, federal agents purchased crack cocaine or heroin from Smith and all of his co-defendants except for Robinson. (*Id.* at 18). Subsequent to his arrest on June 24, 2009, Smith confessed his involvement in the conspiracy to Special Agent Ray. (ECF No. 111 at 19). Numerous witnesses and co-defendants gave statements to federal agents implicating Smith in the sale and distribution of narcotics. (ECF No. 174 at 9–10). Given Smith's confession and the United States' evidence, it is unclear what investigation counsel could have conducted that would have seriously justified Smith going to trial as opposed to pleading guilty.

Moreover, at the plea hearing the District Court questioned Smith regarding his satisfaction with his legal representation:

| | |
|---|---|
| The Court: | Mr. Smith, have you had enough time to discuss this case with your lawyer? |
| Smith: | Yes, sir. |
| The Court: | Has he been able to answer your questions about how you should proceed? |
| Smith: | Yes, sir. |
| The Court: | Are you completely satisfied with the legal advice he's given you? |
| Smith: | Yes, sir. |

(ECF No. 111 at 5). Absent clear and convincing evidence to the contrary, a defendant is

bound by his representations at a plea colloquy concerning the voluntariness of the plea and the adequacy of his representation. *Beck v. Angelone,* 261 F.3d 377, 396 (4th Cir. 2001). Because the undersigned has already concluded that the District Court conducted a thorough and valid Rule 11 plea colloquy and that Smith fully understood the proceedings, Smith is bound by his representation that trial counsel provided adequate assistance prior to Smith's guilty plea.

Finally, and most significantly, Smith has failed to argue at any point that he would have decided to go to trial, but for counsel's failure to conduct a more thorough investigation. Absent such an argument and accompanying proof, Smith simply cannot demonstrate prejudice. *See Hill*, 474 U.S. at 59. For the foregoing reasons, the undersigned **FINDS** that Smith has failed to demonstrate ineffective assistance of counsel in the pretrial investigation.

### 2.      *Failure to Raise Jurisdictional Challenge*

Smith next argues that trial counsel was ineffective for failing to challenge Smith's arrest in Proctorville, Ohio and prosecution in Huntington, West Virginia. (ECF No. 439 at 4). According to Smith, his transfer from Ohio to West Virginia following his arrest created a "jurisdictional dilemma" that prohibited the United States from bringing an indictment against him. Smith's claim fails for two fundamental reasons. First, Smith's knowing and voluntary guilty plea prevents him from raising a claim of ineffective assistance of counsel based upon alleged failures that occurred prior to plea negotiations and that are unrelated to them. "It is well-established that a voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations." *Fields v. Att'y Gen. of Maryland,* 956 F.2d 1290, 1294 (4th Cir. 1992); *see also Tollett v. Henderson,* 411 U.S. at 266. Although defendants are

entitled to effective assistance during plea negotiations, *Lafler*, 132 S. Ct. at 1384, any claims of ineffective assistance of counsel concerning constitutional or statutory violations that "occurred prior to [a defendant's] guilty plea and [are] unrelated to it" are foreclosed from review. *Fields*, 956 F.2d at 1296 (citing *Tollett*, 411 U.S. at 258). Counsel's alleged failure to raise a jurisdictional challenge is unrelated to plea negotiations or Smith's guilty plea, and, thus, this claim is foreclosed from review.

Second, assuming *arguendo* that this claim is not foreclosed and Smith's factual allegations are true, Smith's claim still fails on its merits. On June 23, 2009, a federal grand jury in Huntington, West Virginia returned a ten-count indictment, which charged Smith and five other co-defendants with violating 21 U.S.C. § 846, conspiracy to possess with intent to distribute 50 grams or more of cocaine base and a quantity of heroin in count one of the indictment. (ECF No. 1 at 1).[4] Following the return of the indictment, a warrant for Smith's arrest was issued. (ECF No. 16).

According to the PSR, the next day, June 24, 2009, law enforcement agents, through the use of a confidential informant, arranged to meet Smith at the Family Dollar Store in Proctorville, Ohio to purchase heroin from Smith. (ECF No. 174 at 8). After meeting with members of the Lawrence County Drug and Major Crimes Task Force, the informant met Smith at the Family Dollar Store and entered Smith's vehicle. (*Id.*). At that time, agents blocked Smith's car and placed Smith under arrest. (*Id.*). Smith was arrested by DEA Special Agent Wren Ray, (ECF No. 22), and was subsequently transported back to Huntington for his prosecution pursuant to the federal

---

[4] Count Nine of the indictment charged Smith with knowingly and intentionally distributing five grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1). (ECF No. 1 at 10). Count Ten charged Smith with knowingly and intentionally distributing a quantity of heroin in violation of 21 U.S.C. § 841(a)(1). (*Id.* at 11).

indictment. Beyond a summary assertion that this created a "jurisdictional dilemma," Smith makes no arguments and cites no case law as to why trial counsel should have challenged the District Court's jurisdictional authority.

District courts of the United States "shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. Smith was charged with conspiracy to possess with intent to distribute 50 grams or more of cocaine base and a quantity of heroin in count one of the indictment in violation of 21 U.S.C. § 846. Furthermore, Rule 18 of the Federal Rules of Criminal Procedure provides, "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."

Here, the conspiracy was based in Huntington, West Virginia, in the Southern District of West Virginia. The fact that Smith was arrested in Ohio had no effect on the jurisdictional authority of the Southern District of West Virginia. *See* FED R. CRIM. P. 4(c)(1) ("Only a marshal or other authorized officer may execute a warrant"); *Id.* at 4(c)(2) ("A warrant may be executed . . . within the jurisdiction of the United States or anywhere else a federal statute authorizes an arrest).[5] Smith was properly arrested by a federal law enforcement agent pursuant to a valid federal arrest warrant and properly prosecuted in the District Court with original jurisdiction over the conspiracy offense. Consequently, it would have been frivolous for counsel to have challenged the Court's jurisdiction to preside over Smith's prosecution.  The law is well-settled that the failure of defense counsel to make a frivolous motion cannot support a claim of ineffective

---

[5] The arrest warrant was issued on the basis of a federal indictment. (ECF No. 16). Federal Rule of Criminal Procedure 9 governs the execution of arrest warrants issued on the basis of an indictment and states that "[t]he warrant must be executed . . . as provided in Rule 4(c)(1), (2), and (3)." Fed R. Crim. P. 9(c)(1)(A).

assistance of counsel. *See Moody v. Polk,* 408 F.3d 141, 151 (2005). Therefore, the undersigned **FINDS** that Smith fails to assert a valid claim of ineffective assistance of counsel based upon this jurisdictional issue.

### 3.    *Lack of Legal Knowledge Concerning Conspiracy*

Counsel's advice may constitute ineffective assistance when it is based upon "a startling ignorance of the law" or "oversight, carelessness, ineptitude or laziness." *See Credell v. Bodison*, 818 F.Supp.2d 928, 937 (D.S.C. 2011) (collecting cases). Smith contends that counsel rendered ineffective assistance because he was ignorant of the law concerning conspiracy. (ECF No. 439 at 3, 4). According to Smith, counsel should have known that Smith could not be convicted of conspiracy based solely on the testimony of a confidential informant. (*Id.*).

Once again, Smith's argument is misguided both factually and legally. The record is clear that Smith's conspiracy charge was not based solely on the statement of one confidential informant. Rather, Smith was prosecuted for conspiracy based on controlled drug buys conducted by a confidential informant, a nine month investigation by the DEA and ATF of Smith's involvement in the distribution of narcotics, Smith's own confession following his arrest, and the statements of witnesses and Smith's fellow conspirators.

In order to convict a defendant for the crime of conspiracy to distribute narcotics, the United States need only prove beyond a reasonable doubt: "(1) an agreement between two or more persons to engage in conduct that violates a federal drug law ...; (2) the defendant's knowledge of the conspiracy; and (3) the defendant's knowing and voluntary participation in the conspiracy." *United States v. Hickman,* 626 F.3d 756, 763 (4th Cir. 2010) (internal quotation marks and citation omitted). Proof of a "tacit or

mutual understanding" is sufficient to establish a conspiratorial agreement, and such proof may be inferred from circumstantial evidence. *United States v. Ellis,* 121 F.3d 908, 922 (4th Cir. 1997); *see also United States v. Yearwood,* 518 F.3d 220, 225 (4th Cir. 2008).

In *United States v. Burgos*, 94 F.3d. 849 (4th Cir. 1996) (en banc), the Fourth Circuit engaged in a lengthy discussion of the proof needed to sustain a conviction of conspiracy, emphasizing that the covert and clandestine nature of a conspiracy frequently results in little direct evidence of the agreement. As such, defendant's participation in a conspiracy may be proven solely by circumstantial evidence. The Court explained that the Government need not prove that the defendant knew the particulars of the conspiracy or even all of his co-conspirators:

> Indeed, a defendant properly may be convicted of conspiracy without full knowledge of all of [the conspiracy's] details, but if he joins the conspiracy with an understanding of the unlawful nature thereof and willfully joins in the plan on one occasion, it is sufficient to convict him of conspiracy, even though he had not participated before and even though he played only a minor part.

*Burgos*, 94 F.3d at 858 (citing *United States v. Roberts*, 881 F.2d 95, 101 (4th Cir. 1989)). Once the Government proves beyond a reasonable doubt the existence of a conspiracy, "the evidence 'need only establish a slight connection between the defendant and the conspiracy to support conviction.' " *United States v. Kellam,* 568 F.3d 125, 139 (4th Cir. 2009) (quoting *United States v. Brooks,* 957 F.2d 1138, 1147 (4th Cir. 1992)), *cert. denied,* 130 S.Ct. 657, 175 L.Ed.2d 501 (2009).

In this case, the Government accumulated substantial evidence from the ATF and DEA investigation regarding Smith and his co-conspirators' drug trafficking organization. Special Agent Ray's testimony at Smith's guilty plea hearing outlined the

Government's case against Smith. (ECF No. 111 at 16–19). Special Agent Ray described the structure of the organization, identified the leaders and managers, discussed Smith's personal involvement, and explained the conspiracy's day-to-day operations. (*Id.*). Smith agreed that Special Agent Ray's understanding of the operation was correct. Moreover, following his arrest, Smith confessed his involvement in the conspiracy. (*Id.* at 19). Hence, the evidence of the conspiracy was developed from a range of sources, not just a confidential informant, and was more than sufficient to support a conviction against Smith. In fact, in light of this overwhelming evidence, a challenge to the conspiracy charge on the grounds presented by Smith would have been frivolous. Accordingly, the undersigned **FINDS** that Smith's claim is without merit.

### 4.    *Failure to Challenge the Drug Weight Attributed to Smith*

Smith argues that trial counsel should have known that Smith could not be charged for the total amount of drugs involved in the conspiracy. (ECF No. 439 at 3, 5, 7). In Smith's view, he should have only been held responsible for the sale of 5.6 grams of crack cocaine. (*Id.* at 7).  However, Smith's argument is based on a misunderstanding of the plea bargaining process and the law of conspiracy.

Smith's assertion that he could not be charged for the total amount of drugs involved in the conspiracy is incorrect. Relevant case law and the Sentencing Guidelines explicitly allow for the aggregation of drug weight sold by participants in a conspiracy. Although Smith may wish it were otherwise, "[a] conspirator may be held accountable for all quantities of drugs attributable to the conspiracy so long as it was reasonably foreseeable that the drugs would be involved in the conspiracy and that the drugs were possessed within the scope of the conspiratorial agreement." *United States v. Osborne,* 345 F.3d 281, 284 (4th Cir. 2003); *see also* U.S.S.G. § 1B1.3(a), cmt. n. 2. The

evidence offered at the plea hearing substantiated that Smith was a founding member of the drug trafficking organization, which had a definite hierarchy and established customer base. Smith assumed a managerial role in the operations, directing lower level distributors on the sale and delivery of the organization's narcotics inventory to its customers. The weight attributed to Smith was based upon controlled buys from Smith and his co-defendants and was well-established by the statements of his co-conspirators.  One conspirator, Noah Flora, admitted to selling 50 grams of crack during his first month with the organization and thereafter sold 50 grams every 2-3 days from mid January 2009 through mid March 2009. (ECF No. 174 at 10). In addition, the plea agreement included a factual stipulation that the amount of crack cocaine distributed by the conspiracy was over 50 grams, a fact which Smith conceded by signing the agreement and later by acknowledging the accuracy of the stipulation to the Court. Counsel had no independent knowledge of the weight of the crack sold by Smith and his co-conspirators; Smith agreed that it was at least 50 grams; no evidence existed to the contrary.  Consequently, the undersigned **FINDS** that Smith has failed to demonstrate ineffective assistance based upon the weight of the drugs.

### 5. *Denial of Right to Face Smith's Accuser*

Smith argues that "trial counsel denied movant the right to face [sic] accuser against him." (ECF No. 439 at 5). Smith presents no factual allegations in support of this conclusion and does not explain how this claim relates to his decision to plead guilty. The undersigned is required to liberally construe *pro se* complaints, such as the one filed in this civil action. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. The

undersigned may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

At the Rule 11 hearing, the District Court explained the constitutional rights Smith was foregoing by pleading guilty to the conspiracy charge. (ECF No. 111 at 24–26). Included in the Rule 11 colloquy was the following exchange:

| | |
|---|---|
| The Court: | Do you understand that by pleading guilty, you're giving up your right to force the Government to produce witnesses and evidence against you? |
| Smith: | Yes, sir. |
| . . . | |
| The Court: | Do you understand you and your lawyer could confront the witnesses and he [Smith's lawyer] could cross-examine them to test the truth of what they said? |
| Smith: | Yes, sir. |
| The Court: | Do you understand that by pleading guilty, you give up that right? |
| Smith: | Yes, sir. |

(*Id.* at 25–26). Given that Smith's guilty plea was knowing and voluntary and Smith explicitly understood he was giving up the right to confront witnesses, the undersigned **FINDS** that Smith's claim of ineffective assistance is wholly without substance.

### C.    Ineffective Assistance Related to Sentencing

Smith also argues that counsel rendered ineffective assistance related to his sentencing. "The precedents also establish that there exists a right to counsel during

sentencing in both noncapital and capital cases. Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because "any amount of [additional] jail time has Sixth Amendment significance." *Lafler,* 132 S.Ct. at 1385-86, *citing Glover v. United States,* 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) (internal citations omitted); s*ee also United States v. Breckenridge,* 93 F.3d 132, 135 (4th Cir. 1996). In order to establish deficient performance, a movant must show that his counsel's performance at sentencing fell below an objective standard of reasonableness. In order to establish prejudice in the context of sentencing, a movant must at a minimum allege facts which demonstrate a "reasonable probability" that his sentence would have been more lenient absent counsel's errors. *See Buckner v. Polk*, 453 F.3d 195, 201–08 (4th Cir. 2006); *Royal v. Taylor,* 188 F.3d 239, 248–49 (4th Cir. 1999).

Smith claims that trial counsel rendered ineffective assistance due to his failure to investigate and object to the enhancements that were applied to Smith at sentencing.[6] (ECF Nos. 439, 449, 462). According to Smith, these enhancements violated the Constitution and the terms of his plea agreement. While Smith provides facts in support of the argument concerning his career offender enhancement, (ECF Nos. 449, 462), he offers no factual allegations to support his argument with respect to the firearm and

---

[6] In addition, Smith generally argues that trial counsel was ineffective because he allowed an *Apprendi* violation to occur. (ECF No. 439 at 7). Smith argues that "the enhancement" gave him more time than the prescribed "mandatory maximum." (*Id.*). Smith does not identify the enhancement that he is challenging and presents no factual allegations or legal argument to support his conclusory assertion that an Apprendi violation occurred. The undersigned may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

managerial enhancements. Having reviewed the record, the undersigned finds that all three enhancements were appropriately included in calculating Smith's total offense level.

### 1.    Career Offender Enhancement

Smith contends that he is not, in fact, a career offender and that trial counsel was ineffective for failing to challenge the PSR at sentencing. (ECF No. 449 at 1–2). He argues that his criminal history includes only one prior conviction that would qualify as a predicate offense under the Sentencing Guidelines and the PSR improperly considered convictions with suspended sentences as predicate offenses. According to Smith, because his sentence was suspended in two instances and he ultimately served less than one year in custody for each crime, these convictions did not qualify as predicates for application of the career offender enhancement.

While courts have found that failing to object to an improper career offender enhancement can constitute ineffective assistance of counsel, *See United States v. Lewis*, 2012 WL 1372121 (4th Cir. April 20, 2012); *United States v. Horey,* 333 F.3d 1185 (10th Cir. 2003), no such error occurred in this case. The record indisputably establishes that Smith's criminal record includes three convictions that were punishable by terms of imprisonment exceeding one year and, thus, qualify as predicate offenses under the career offender sentencing guidelines. The sentence actually served by Smith is irrelevant to the application of the enhancement. Therefore, the undersigned finds that Smith's contention is simply erroneous.

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled

substance offense;[7] and (3) the defendant has at least two prior felony convictions[8] of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1. Smith does not challenge the finding that he satisfies the first two criteria, but argues that he does not satisfy the third criterion because he does not have the requisite number of convictions for controlled substance offenses. The provisions of § 4A1.2 apply to the counting of convictions under § 4B1.1. *See Id.* at § 4B1.1, Application Note 3. Under § 4A1.2, if a defendant has multiple prior sentences, courts are required to determine whether those sentences are counted separately or together as a single sentence. The Sentencing Guidelines make clear that prior sentences are "always counted separately if the sentences were imposed for offenses that were separated by an intervening arrest." *Id.* at § 4A1.2(a)(2).

Smith's criminal history included three convictions that qualify as predicate offenses under the Sentencing Guidelines. On December 19, 1994, Smith was arrested and charged with Aggravated Trafficking in Drugs, a third degree felony, in the Franklin County Court of Common Pleas in Columbus, Ohio. (ECF No. 174 at 13; ECF No. 454-1 at 2). On November 16, 1995, Smith pled guilty to the charge of Aggravated Trafficking. On January 10, 1996, Smith received a suspended two year prison sentence and was placed on a four year term of probation. After being declared an absconder, Smith's

---

[7] The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense. U.S.S.G. § 4B1.2.

[8] The term "two prior felony convictions" means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (i.e., two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a), (b), or (c).

probation was revoked on July 16, 1997, at which time he was sentenced to two years in prison, with credit for 340 days of jail time. While awaiting trial on the charge of Aggravated Trafficking, Smith was arrested on February 8, 1995 for Attempted Aggravated Trafficking in Drugs. (*Id.*). Smith was subsequently prosecuted in the Franklin County Court of Common Plea in Columbus, Ohio. On November 16, 1995, Smith pled guilty to the charge of Attempted Aggravated Trafficking. On January 10, 1996, Smith received a suspended 18 month prison sentence and was placed on four years probation. After being declared an absconder, Smith's probation was revoked and Smith was sentenced to 18 months in prison on July 16, 1997, with credit for 322 days of jail time.

Both of these convictions satisfy the criteria for prior felony convictions for a controlled substance offense.[9] "Prior felony conviction means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and *regardless of the actual sentence imposed*." U.S.S.G. § 4B1.2, Application Note 1 (emphasis added). Under Ohio law, Aggravated Trafficking and Attempted Aggravated Trafficking both constitute offenses punishable by imprisonment for a term exceeding one year. *See* OHIO REV. CODE § 2925.03; OHIO REV. CODE § 2929.13; *see also* ECF No. 454-1 at 2. These offenses were separated by an intervening arrest; therefore, the District Court correctly counted the sentences for Aggravated Trafficking and

---

[9] Attempts to commit a "controlled substance offense" are explicitly included in the definition of "controlled substance offense." *See* U.S.S.G. § 4B1.2, Application Note 1.

Attempted Aggravating Trafficking as separate offenses for career offender purposes. *See* U.S.S.G. § 4A1.2(a)(2).

Moreover, the District Court properly identified a third conviction that would qualify as a prior felony conviction for purposes of the career offender enhancement. On November 16, 2002, Smith was arrested and charged with two counts of Trafficking in Crack Cocaine (Vicinity of a Juvenile), 4th Degree Felonies; one count of Possession of Cocaine, a Fifth Degree Felony; two counts of Possession of Crack Cocaine, Third Degree Felonies; and once count of Possession of Marijuana. (ECF No. 454-1 at 5). On June 4, 2003, Smith pled guilty to all counts. Subsequently, Smith was sentenced to one year imprisonment on each count of Trafficking in Crack Cocaine (Vicinity of a Juvenile); six months imprisonment on the count of Possession of Cocaine; five years imprisonment on each count of Possession of Crack Cocaine; and a $100.00 fine on the charge of Possession of Marijuana. Smith was sentenced to serve his sentences concurrently.

Excluding the marijuana conviction, these convictions collectively qualify as a prior felony conviction for purposes of the career offender enhancement because each offense was punishable by imprisonment for a term exceeding one year. *See* OHIO REV. CODE § 2925.03; OHIO REV. CODE § 2929.13. In total, Smith's criminal history includes three prior felony convictions that satisfy the requirements of U.S.S.G. § 4B1.1.[10] In

---

[10] Smith's argument in his Motion to Supplement and Reply Brief are misguided. (ECF Nos. 449, 462). As best the undersigned can tell, Smith is concerned with the fact that several of his sentences were initially suspended and then imposed following the revocation of his parole. Smith appears to believe that these circumstances prevent his convictions from being counted as predicate offenses for purposes of the career offender enhancement. (ECF No. 451 at 2). However, in making his argument, Smith refers to the Armed Career Criminal Act and the calculation of criminal history points, which are unrelated to the determination of whether someone qualifies as a career offender under U.S.S.G. § 4B1.1 . The Sentencing Guidelines and case law simply do not support Smith's argument. Moreover, even if Smith was correct that he did not qualify as a career offender, his guideline range would have remained the same because of the firearm enhancement and managerial enhancement.

combination with Smith's guilty plea to the conspiracy charge in the instant case, Smith clearly qualified as a career offender. In view of this conclusion, it would have been frivolous for counsel to challenge the career offender enhancement. Therefore, the undersigned **FINDS** that Smith's ineffective assistance claim regarding the career offender enhancement is without merit.

### 2. *Firearm Enhancement*

Smith argues generally that he did not plead or admit to the firearm enhancement and therefore application of the firearm enhancement constituted a breach of the plea agreement. (ECF No. 439 at 7). Further, Smith maintains that trial counsel was ineffective for failing to investigate and object to the firearm enhancement. (*Id.*). Smith's argument fails for several reasons. First, Smith was given the opportunity to review the PSR and object to any of its findings. Smith offered no objections at his sentencing hearing and the District Court properly adopted the PSR. Second, based on the evidence contained in the PSR and Smith's own confession, the firearm enhancement was properly applied.

A district court has broad discretion to apply the firearm enhancement. *United States v. Dismukes*, 454 F. App'x 167, 169 (4th Cir. 2011). Under the Sentencing Guidelines, a firearm enhancement is proper when "the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." *United States v. Manigan,* 592 F.3d 621, 628–29 (4th Cir. 2010) (internal citations omitted). The Government must prove the facts needed to support a sentencing enhancement by a preponderance of the evidence. *United States v. Milam,* 443 F.3d 382, 386 (4th Cir. 2006). The enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon

was connected with the offense." U.S.S.G. § 2D1.1, Application Note 3. "[T]he Government need show only that the weapon was possessed during the relevant illegal drug activity." *United States v. McAllister*, 272 F.3d 228, 234 (4th Cir. 2001). "[P]roof of constructive possession of the dangerous weapon is sufficient, and the Government is entitled to rely on circumstantial evidence to carry its burden." *Manigan*, 592 F.3d at 629.

Following Smith's guilty plea, the Probation Office prepared a PSR, detailing Smith's conduct related to the conspiracy, including the usage of firearms in the course of the conspiracy. (ECF No. 174). The PSR recommended a two level firearm enhancement because members of the conspiracy were known to carry weapons during drug deals and to trade drugs for weapons. (*Id.* at 11). At sentencing, the District Court enquired as to whether Smith and his counsel had read the PSR. (ECF No. 456 at 2–3). Both Smith and counsel stated that they had reviewed the PSR and understood its contents. (*Id.*). The District Court subsequently calculated the guideline range and adopted the findings of the PSR and addendum. (*Id.* at 3). Next, the District Court explicitly discussed Smith's qualifications for the firearms enhancement. (*Id.* at 4). Smith and counsel did not challenge the District Court's imposition of the firearms enhancement or the calculation of the guideline range. (*Id.* at 6).

Following his arrest, Smith gave a Mirandized statement in which he admitted to occasionally trading drugs for firearms. (ECF No. 174 at 8). Smith specifically recalled trading heroin for a shotgun that was stored at a home in Chesapeake, Ohio.[11] (*Id.*). Smith also reported that there were firearms and a quantity of heroin at Jason Belcher's

---

[11] According to the PSR, Lee and Rhonda McDonald allowed members of the conspiracy to sell drugs from their house in exchange for heroin and cocaine base. (ECF No. 174 at 8).

residence. (*Id.*). Law enforcement agents recovered the shotgun from Rhonda McDonald's house, and she corroborated Smith's account to the police. (*Id.* at 9).

On the same day as Smith's arrest, federal agents arrested Jason Belcher, Smith's co-conspirator, after Belcher sold an undercover agent 52 grams of cocaine base. (*Id.*). Agents then obtained a search warrant for Belcher's apartment. (*Id.*). During the execution of the search warrant, agents found narcotics, large quantities of cash, miscellaneous documents addressed to Smith, and a Smith and Wesson .38 special. (ECF No. 174 at 9). Smith's niece, Sierra Smith, returned to the apartment during the search to obtain her belongings. (*Id.*). Ms. Smith stated that she was aware of her uncle's involvement in the drug business and had accompanied him, Belcher, and Robinson to and from Columbus three times in the preceding week. Ms. Smith also confirmed the presence of guns in the apartment; specifically, Ms. Smith recalled Belcher bragging about all of the guns. (*Id.* at 9–10). She stated that Belcher had made a list of the guns, which was found during the search of Belcher's apartment. (*Id.* at 10).

On June 25, 2009, Noah Flora, one of Smith's co-conspirators, was arrested on a federal indictment. (*Id.*). Flora waived his *Miranda* rights and gave a statement explaining his involvement in the drug trafficking organization. He indicated that he ranked at the bottom level of the operation and that Belcher, Robinson, and Smith were in charge. During his time with the group, he personally sold well over 50 grams of crack.  He also confirmed that firearms were stored at the various locations where members of the conspiracy distributed narcotics. (*Id.*). On June 25, 2009, Britton Fiske, another co-conspirator, was arrested by federal agents. (ECF No. 174 at 10). Like Flora, Fiske waived his *Miranda* rights and informed agents that he was a low level seller in the organization. According to Fiske, firearms were always present with the drugs. (*Id.*).

In this case, the firearm enhancement was recommended in the presentence report prepared by the Probation Office. By Smith's own admission, he occasionally traded drugs for guns during the course of the conspiracy. Further, multiple witnesses and co-conspirators confirmed the presence of guns at locations from which members of the conspiracy distributed narcotics. Such facts were clearly sufficient to support the application of the firearm enhancement. A District Court may consider a number of sources when making factual determinations at sentencing, including "unsworn and out of court statements so long as such statements exhibit an adequate indicia of reliability." *United States v. Hamad*, 2012 WL 2055008 (4th Cir. June 8, 2012), *citing United States V. Nichols*, 438 F.3d 437, 439-40 (4th Cir. 2006). Further, because Smith did not dispute the report's factual findings regarding the presence of weapons, "the government [met] its burden of proving those facts by a preponderance of the evidence," and the court was "free to adopt the findings ... without more specific inquiry or explanation." *United States v. Revels,* 455 F.3d 448, 451, n. 2 (4th Cir. 2006) (internal citations omitted); *see also United States v. Gilliam,* 987 F.2d 1009, 1013 (4th Cir. 1993) ("[T]he Government carries its burden if a defendant fails to properly object to a recommended finding in a presentence report that the court determines to be reliable.").

In the instant motion, Smith does not deny that he possessed a firearm or dispute the accuracy of the facts summarized in the presentence report. Instead, Smith contends that his attorney was ineffective in failing to challenge the enhancement, since the firearm enhancement was not part of the plea agreement. However, the plea agreement contained no concession by the United States to refrain from seeking a firearm enhancement or any other enhancement under the advisory guidelines, and the parties acknowledged that "[t]he United States reserve[d] the right to . . . [i]nform the

Probation Office and the Court of all relevant facts and conduct." (ECF No. 107 at 5).
Therefore, the undersigned **FINDS** that Smith has not demonstrated that his counsel
rendered ineffective assistance in regard to the firearm enhancement.

### 3.    *Managerial Enhancement*

As with the firearm enhancement, Smith contends that he did not plead or admit
to the managerial enhancement and therefore the imposition of the managerial
enhancement at sentencing constituted a breach of the plea agreement. (ECF No. 439 at
7). Further, in Smith's view, trial counsel was ineffective for failing to investigate and
object to the managerial enhancement. (*Id.*). Smith's assertion is frivolous in view of the
statements obtained from multiple individuals, who identified Smith as having a high-
ranking position in the organization. Moreover, Smith was given the opportunity to
review the PSR, which included summaries of the statements, and object to any of its
findings. Smith offered no objections at his sentencing hearing, nor refuted his
managerial role.

Pursuant to U.S.S.G § 3B1.1(b), a defendant qualifies for a three-level
enhancement if he was "a manager or supervisor (but not an organizer or leader) and
the criminal activity involved five or more participants or was otherwise extensive."
U.S.S.G. § 3B1.1(b). To qualify as a manager or supervisor, the defendant need only have
exercised control over one participant. U.S.S.G. § 3B1.1, Application Note 2. In
determining a defendant's leadership role, a court should consider seven factors:

> the exercise of decision making authority, the nature of participation in the
> commission of the offense, the recruitment of accomplices, the claimed
> right to a larger share of the fruits of the crime, the degree of participation
> in planning or organizing the offense, the nature and scope of the illegal
> activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, Application Note 4; *see also United States v. Cameron*, 573 F.3d 179, 184 (4th Cir. 2009).

Smith's PSR recommended a three level managerial enhancement because of Smith's role as a manager of the conspiracy, which involved five or more participants. (ECF No. 174 at 11–12). At sentencing, the District Court enquired as to whether Smith and his counsel had read the PSR. (ECF No. 456 at 2–3). Both Smith and counsel stated that they had reviewed the PSR and understood its contents. (*Id.*). The District Court subsequently calculated the guideline range and adopted the findings of the PSR and addendum. (*Id.* at 3). Next, the District Court explicitly discussed Smith's qualifications for the managerial enhancement, noting that he was a manager or supervisor, but not an organizer or leader. (*Id.* at 4). Smith and counsel did not dispute this finding or object to the District Court's imposition of the managerial enhancement or the calculation of the guideline range. (*Id.* at 6).

In the instant case, more than sufficient evidence existed to support the managerial enhancement. At the plea hearing, the Government presented testimony of Special Agent Wren Ray concerning Smith's involvement in the conspiracy. (ECF No. 111 at 16–19). Special Agent Ray testified that Smith engaged in a conspiracy with Kevin Robinson, Noah Flora, Britton Fiske, Jason Belcher, and Steven Hester to distribute crack cocaine and narcotics in and around Huntington, West Virginia. (*Id.* at 16–17). According to Special Agent Ray, Smith and Robinson initially agreed to obtain quantities of crack cocaine that would be transported from out of state to Huntington to be distributed. (*Id.* at 17). Subsequently, Belcher, Flora, Hester, and Fiske were brought into the conspiracy. (*Id.*). Special Agent Ray noted that Smith, Robinson, and Belcher "specifically would direct other members of the organization either in where to

distribute a quantity of drugs or to make deliveries to certain customers." (*Id.* at 18). The proceeds of the group's drug sales would be pooled and Smith, Robinson, and Belcher would use that pool of money to purchase additional quantities of narcotics. (*Id.*). After hearing this summary of the history and hierarchy of the organization, Smith acknowledged that Special Agent Ray's testimony was substantially correct. (ECF No. 111 at 19–20).

The PSR included additional evidence that supported the managerial enhancement. On June 25, 2009, Noah Flora was arrested and gave a Mirandized statement to law enforcement officers. (ECF No. 174 at 10). Flora described the various echelons of the drug trafficking organization, stating that he was at the bottom of the organization and sold crack cocaine primarily under the direction of Jason Belcher. (*Id.*). Nonetheless, Flora confirmed that Robinson, Smith, and Belcher were the "big guys" in the organization. (*Id.*). On June 26, 2009, Britton Fiske was arrested and agreed to cooperate with law enforcement officers. (*Id.*). Fiske corroborated Flora's statement that Robinson, Smith, and Belcher were the leaders of the conspiracy. (*Id.*). According to Fiske, he delivered as much as $22,000 per week to Belcher, Robinson, or Smith. (*Id.*). The evidence clearly showed that the criminal conspiracy involved at least five people and that Smith exercised managerial control over at least one of the participants. Further, as previously noted, because Smith conceded the report's factual findings at the sentencing hearing, "the government [met] its burden of proving those facts by a preponderance of the evidence," and the court was "free to adopt the findings ... without more specific inquiry or explanation." *United States v. Revels,* 455 F.3d 448, 451 n. 2 (4th Cir. 2006) (internal citations omitted); *see also United States v. Gilliam,* 987 F.2d 1009, 1013 (4th Cir. 1993). Based on the evidence available to the

District Court, the managerial enhancement was properly applied and a challenge to the enhancement would have been frivolous.

Moreover, the plea agreement contained no concession by the United States to refrain from seeking a managerial enhancement or any other enhancement under the advisory guidelines, and the parties acknowledged that "[t]he United States reserve[d] the right to . . . [i]nform the Probation Office and the Court of all relevant facts and conduct." (ECF No. 107 at 5). Accordingly, the undersigned **FINDS** that the plea agreement was not breached and Smith's counsel was not ineffective assistance for failing to challenge the managerial enhancement.

### D.   Waiver of Collateral Attack

Throughout his pleadings, Smith raises a number of claims unrelated to ineffective assistance of counsel. According to Smith, the district court lacked jurisdiction over him, (ECF No. 425 at 6); his Fifth Amendment due process rights were violated, (*Id.* at 7); his sentence was improper because he was "imprisoned for debt," (*Id.* at 8); and his sentence based on the 100-1 disparity in crack sentencing was unconstitutional, (ECF No. 439 at 3).[12] Given that Smith knowingly and voluntarily waived his right to raise a collateral challenge to his conviction and sentence, except on the grounds of ineffective assistance of counsel, these claims are foreclosed from review.

A criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary. *Lemaster*, 403 F.3d 216,

---

[12] Smith separately moved pursuant to 18 U.S.C. §3582(c)(2) for a sentence reduction based upon the retroactive sentencing guidelines pertaining to crack cocaine. (ECF No. 440). That motion was denied given that Smith was sentenced based upon his career offender status rather than on the crack cocaine guidelines.  (ECF No. 441). Smith appealed this ruling to the Fourth Circuit Court of Appeals. (ECF No. 443). The Fourth Circuit affirmed the District Court's ruling.  (ECF Nos. 457 and 458).

220 (4th Cir. 2005).[13] Statements made during a hearing to accept a guilty plea are afforded a strong presumption of veracity and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *Id.* at 221. To the extent that Smith's petitions can be construed as alleging that the waiver of his collateral-attack rights was not knowingly and voluntarily entered, this argument is squarely contradicted by his own sworn statements at his Rule 11 hearing. *See Fields*, 956 F.2d at 299 ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.").

As the record reflects, the District Court conducted a thorough Rule 11 colloquy. (ECF No. 111). Smith's attorney explained the contents of the plea agreement on the record. (*Id.* at 5–10). The District Court questioned Smith over his understanding of the plea agreement and Smith affirmed that he understood the terms of the agreement as explained by his attorney. (*Id.* at 11). The Court explicitly reviewed the terms of Smith's plea agreement concerning Smith's waiver of appeal and collateral attack rights. (*Id.* at 23–24). Smith acknowledged his understanding of the waiver provision on the record. (*Id.*). Finally, the Court confirmed the voluntary nature of Smith's guilty plea. (*Id.* at 26–27). Smith confirmed that his guilty plea was voluntary and that he had no second thoughts about the terms of the plea agreement or his decision to plead guilty. (ECF No. 111 at 26–27).

---

[13] The Fourth Circuit has recognized a narrow class of claims that fall outside of the scope of a general waiver of collateral-attack rights, namely claims regarding complete deprivation of counsel and the imposition of a sentence in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race. *United States v. Lemaster,* 403 F.3d 216, 220, n. 2 (4th Cir. 2005). Smith's claims at issue here do not fall into this class of exceptions.

The written plea agreement further supports the conclusion that Smith's waiver of collateral attack was knowing and voluntary. (ECF 107). Smith's plea agreement contained a detailed waiver of appeal and collateral attack, including the following provision, "Mr. Smith . . . knowingly and voluntarily waives the right to challenge his guilty plea and his conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255." (ECF No. 107 at 4–5). Smith initialed each page of the plea agreement and signed the last page of the agreement, affirming that he had read and carefully discussed every part of the agreement with his attorney. (*Id.* at 6). Smith further confirmed that he voluntarily agreed to the terms and conditions set forth in the agreement.

In light of the foregoing evidence, the undersigned **FINDS** that Smith's waiver of collateral attack was knowing and voluntary. Smith repeatedly affirmed his understanding of the plea agreement and voluntary waiver of collateral attack. Consequently, the undersigned **FINDS** that Smith's remaining claims are foreclosed from review.

## V.    <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** the following:

1.    Movant's Application Under 28 U.S.C. § 2255 for Writ of Habeas Corpus by a Person in State or Federal Custody (ECF No. 425) and his Motion to Supplement Pleadings (ECF No. 466) be **DENIED**; and

2.    This civil action be **DISMISSED, with prejudice,** and removed from

the docket of this Court.

Movant is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Movant shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, Respondent, and any counsel of record.

**FILED**:  June 27, 2012.

Cheryl A. Eifert
United States Magistrate Judge